IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**THE ESTATE OF GREGORY PRATER,**

    *Plaintiff*,

    v.

**EROSUN INC,**

    *Defendant*.

Civil No.: 1:24-cv-00112-JRR

## MEMORANDUM OPINION

This matter comes before the court on Defendant Erosun Inc.'s Motion to Dismiss the Complaint. (ECF No. 11; "the Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023).

### I.    BACKGROUND[1]

Plaintiff Estate of Gregory Prater, by personal representative Angelina Petrosky, filed this action against Defendant Erosun, Inc. (ECF No. 4; the "Complaint.") Eroson is a residential care facility for people with developmental disabilities. *Id.* ¶ 4. As a teenager, Prater was involved in an automobile collision in which he sustained traumatic brain injury; as a result, Prater had severe developmental disabilities. *Id.* ¶ 2. The State of Maryland was the public guardian of Prater following the collision; he was placed in the care of Erosun, where he lived for approximately 10 years until his death. *Id.* ¶ 3.

On or about July 16, 2020, while at Erosun, Prater was being fed his chicken lunch and began to choke. (ECF No. 4 ¶ 5.) Staff at Erosun did not perform the Heimlich maneuver or CPR.

---

[1] For purposes of resolving the pending motions, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 4.) *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

*Id.* ¶ 6.  Erosun staff misrepresented to Prater's sister and EMS who arrived on scene that Prater suffered a heart attack either during or immediately following his lunch.  *Id.* ¶ 7.  EMS intubated Prater while he was still alove and had food lodged in his throat.  *Id.* ¶ 8.  Prater was transported to Greater Baltimore Medical Center, where he passed away a year later, on July 19, 2021.  *Id.* ¶ 9.

On January 4, 2024, Plaintiff filed this action in the Circuit Court for Baltimore County, Maryland, which Defendant promptly removed on the basis of federal question subject matter jurisdiction.  (ECF No. 1)  The Complaint sets forth two counts: Negligence (Count I); and Violation of the Developmental Disabilities Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 15009 through 42 U.S.C. § 1983 ("DDABRA") (Count II).  (ECF No. 4.)

Defendant moves to dismiss Plaintiff's negligence claim (Count I) because Plaintiff failed to commence this action in accordance with § 3-2A-06B(f) of the Courts and Judicial Proceedings Article of the Maryland Code, M<small>D</small>. C<small>ODE</small> A<small>NN</small>., C<small>TS</small>. & J<small>UD</small>. P<small>ROC</small>. ("CJP") § 3-2A-06B(f), and failed to file a sufficient certificate of qualified expert pursuant to CJP § 3-2A-04(b)(1).  *Id.* at 3–9.  Defendant argues that Count II should be dismissed because the DDABRA does not confer a private right of action.  *Id.* at 9–11.

## II.     LEGAL STANDARD

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain

that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

### III. ANALYSIS

#### A. DDABRA (Count II)

In Count II, Plaintiff asserts that Defendant violated the DDABRA, specifically 42 U.S.C. § 15009(a)(3)(B)(ii)[2] and § 15009(a)(4)(B)(ii)[3] by failing to meet his needs generally, failing to

---

[2] Plaintiff's citation to 42 U.S.C. § 15009(a)(3)(A)(ii) appears to be a typo because no such section exists. Rather, 42 U.S.C. § 15009(a)(3)(B)(ii) provides: "The Federal Government and the States both have an obligation to ensure that public funds are provided only to institutional programs, residential programs, and other community programs, including educational programs in which individuals with developmental disabilities participate, that . . . meet minimum standards relating to . . . provision to such individuals of appropriate and sufficient medical and dental services[.]"

[3] 42 U.S.C. § 15009(a)(4)(B)(ii) provides in part:

> All programs for individuals with developmental disabilities should meet standards—

provide appropriate medical treatment (as evidenced by the fact that no one "was trained to perform CPR when" Prater was choking), and failure to provide proper dental care (as evidence by the fact that Prater was unable to chew his food). (ECF No. 4 ¶¶ 19–21.)

Defendant seeks dismissal of Plaintiff's DDABRA claim on the basis that 42 U.S.C. § 15009 does not confer a private right of action. (ECF No. 11-1 at 9–11.) In response, Plaintiff appears to concede, averring: "Plaintiff's Counsel is amenable to removing this claim from the Complaint and having this case transferred back to Baltimore County Circuit Court." (ECF No. 13-1 at 8.)

In *Tall v. Maryland Department of Health and Mental Hygiene*, this court succinctly explained:

> "The DDABRA provides funding to assist state created and managed programs which are directed to the Act's purpose of assuring that developmentally disabled persons and their families have access to services and support." *Karaahmetoglu v. Res-Care, Inc.*, 480 F. Supp. 2d 183, 188 (D.D.C. 2007). Similarly, in *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1 (1981), the Court held that parts of the Developmentally Disabled Assistance and Bill of Rights Act of 1975. 42 U.S.C. § 6000 *et seq.*, did not grant federal rights to the developmentally disabled. *Id.* at 31. Although the "bill of rights" provision, 42 U.S.C. § 6010, used language that appeared to be rights-creating, (*e.g.*, declaring that the "mentally retarded" had a right to "nondiscriminatory" and "minimally adequate habilitation" in the "least restrictive environment") the Court held that the language did not create mandatory obligations on the state receiving funds under the statute but instead communicated congressional preferences. *Id.* at 7. The

---

(ii) in the case of other residential programs for individuals with developmental disabilities, that assure that--
    (I) care is appropriate to the needs of the individuals being served by such programs;
    (II) the individuals admitted to facilities of such programs are individuals whose needs can be met through services provided by such facilities; and
    (III) the facilities of such programs provide for the humane care of the residents of the facilities, are sanitary, and protect their rights . . .

>Court reasoned that the provision "does no more than express a congressional preference for certain kinds of treatment." *Id.* at 19.

No. GJH-17-2120, 2018 WL 2075281, at *6 (D. Md. May 2, 2018), *aff'd*, 740 F. App'x 313 (4th Cir. 2018); *see Gonzaga Univ. v. Doe*, 536 U.S. 273, 279 (2002) (noting that in *Pennhurst* the Supreme Court "rejected a claim that the Developmental Disabled Assistance and Bill of Rights Act of 1975 conferred enforceable rights"); *Duncan v. Johnson-Mathers Health Care, Inc.*, No. 5:09-CV-00417-KKC, 2010 WL 3000718, at *11 (E.D. Ky. July 28, 2010) (same);   Accordingly, the Motion will be granted as to Count II.

### B.    Negligence (Count I)

In view of the court's conclusion above, the only remaining claim in this case is Count I – negligence.  As stated, Plaintiff concedes dismissal of Count II and suggests remand to the Circuit Court for Baltimore County is appropriate.  (ECF No. 13-1 at 8.)

"In *Carnegie–Mellon*,[4] the [Supreme] Court found federal courts to have an *inherent* power to remand removed State claims when the federal claims drop out of the case." *Hinson v. Norwest Financial South Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001) (emphasis in original).  "Even though *Carnegie–Mellon* was decided before the doctrine of pendent jurisdiction was codified in 28 U.S.C. § 1367 . . . it continues to inform the proper interpretation of § 1367(c), which authorizes a district court in its discretion to 'decline to exercise supplemental jurisdiction' over a pendent State claim." *Id.* (quoting  28 U.S.C. § 1367(c)).

28 U.S.C. § 1367(c) provides:

>(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
>>(1) the claim raises a novel or complex issue of State law,

---

[4] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988).

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). The Fourth Circuit's decision in *Shanaghan v. Cahill* provides instruction on the various factors to evaluate in determining whether to exercise supplemental jurisdiction:

> The statute then goes on to provide that courts "may decline" to exercise supplemental jurisdiction in certain circumstances. 28 U.S.C. § 1367(c). In particular, a court has discretion to dismiss or keep a case when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Recent case law has emphasized that trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished. *See, e.g., Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Growth Horizons, Inc. v. Delaware Cty.*, 983 F.2d 1277, 1284 (3d Cir. 1993). The doctrine of supplemental jurisdiction "thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Cohill*, 484 U.S. at 350.

58 F.3d 106, 110 (4th Cir. 1995). "[A] remand may best promote the values of economy, convenience, fairness, and comity. Both litigants and States have an interest in the prompt and efficient resolution of controversies based on state law." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988).

Here, the court declines to exercise supplemental jurisdiction over the remaining state law claim. The case is in its infancy—no scheduling order has been issued; no discovery has occurred. *See Tolliver v. Tandium Corp.*, No. CV ELH-21-1441, 2022 WL 80587 (D. Md. Jan. 7, 2022) (finding remand appropriate where the case "has not progressed in this [c]ourt beyond very preliminary motion practice, without any consideration on the merits") (citing *Carnegie-Mellon*, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.")). There is no evidence of bad faith on the part of Plaintiff in conceding dismissal of the federal claim and remand to state court. *See Ramotnik v. Fisher*, 568 F. Supp. 2d 598, 603 (D. Md. 2008); ("[I]t is not bad faith for a plaintiff to bring both State and federal claims in State court and then, upon removal, seek dismissal of the federal claims and remand to State court. Such a remand is the risk that a removing defendant takes."). Moreover, Plaintiff's remaining claim arises under Maryland state law and involves the Health Care Malpractice Claims Act, CJA §§ 3–2A–01, *et seq.*, "which Maryland courts are 'obviously well equipped' to address." *Montgomery v. Freedom Mortg. Corp.*, No. CV GLS-21-02643, 2022 WL 3139638, at *8 (D. Md. Aug. 5, 2022) (quoting *Tolliver*, 2022 WL 80587, at *4. Where only the state law claim remains, remand is appropriate because "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see Montgomery*, 2022 WL 3139638, at *8 (remanding case "where only state law claims remain because '[n]eedless decisions of state law should be avoided'") (citing *Gibbs*, 383 U.S. at 726).

Accordingly, the court declines to exercise supplemental jurisdiction over Plaintiff's negligence claim, will remand this action to state court, and deny as moot that portion of the Motion addressing Plaintiff's negligence claim. *See Hackett v. Bayview Loan Servicing, LLC*, No. 18-CV-01286-PX, 2018 WL 6812617, at *4 (D. Md. Dec. 27, 2018) (remanding case and denying as moot the defendants' motion to dismiss as to the remaining state law claims).

### IV.   CONCLUSION

For the reasons set forth herein, by separate order, Defendant's Motion to Dismiss (ECF No. 11) will be granted in part and denied in part. The Motion will be granted as to Count II; denied as moot as to Count I; and the case will be remanded to the Baltimore County Circuit Court.

September 2, 2024

/S/
_____
Julie R. Rubin
United States District Judge